IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| William F. Craig, III and Ragin Craig, | C/A No. 0:13-cv-01767-JFA |
| Plaintiffs, | |
| vs. | **ORDER** |
| United States Army Corps of Engineers, Charleston District, Lt. General Thomas P. Bostick, in his official capacity as Chief of Engineers, Lt. Col. John T. Litz, in his official capacity as District Engineer, US Army Corps of Engineers, Charleston District, United States Environmental Protection Agency, Gina McCarthy, in her official capacity as Administrator of the U.S. Environmental Protection Agency, A. Stanley Meiburg, in his official capacity as Regional Administrator, Region IV, U.S. Environmental Protection Agency, and Robert D. Lesslie. | |
| Defendant. | |

**I.     INTRODUCTION**

This case arises from alleged violations of the Clean Water Act's permitting provisions under Section 404 of the Act, 33 U.S.C. § 1344. Specifically, this citizen's suit brought by William Craig and Ragin Craig (collectively "Plaintiffs") involves a review of the United States Army Corps of Engineers, United States Environmental Protection Agency, Thomas Bostick, John Litz, Gina McCarthy and Stanley Meiburg's ("Federal Defendants") decision to not require

1

Defendant Robert Lesslie ("Lesslie") to obtain a permit to construct a pond on his property, and their decision that his impoundment qualifies for a farm pond exemption under the Act.

## II.     CLEAN WATER ACT

The Federal Water Pollution Control Act, more commonly known as the Clean Water Act ("the Act"), 33 U.S.C. § 1251, *et seq.*, establishes a comprehensive program designed to restore and maintain the chemical, physical, and biological integrity of the Nation's waters. The statute prohibits the discharge of pollutants, including fill material, into navigable waters, except in compliance with specific provisions of the Act.  33 U.S.C. § 133 (a). Section 502 of the Act defines "navigable waters" as "waters of the United States," which includes rivers, lakes, streams, tidal waters, and most wetlands. 33 U.S.C. § 1362(7); 33 C.F.R. § 328.3(a), (b); *see also* 40 C.F.R. § 230.3(s).

The Act further defines "discharge of pollutants" to include "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12)(A).  Earthen material may constitute dredge or fill material and section 404 authorizes the United States Army Corps of Engineers ("Corps") to "issue permits . . . for the discharge of dredged or fill material into the navigable waters at specified disposal sites." 33 U.S.C. § 1344(a) ("Section 404 permits").

Several narrow exemptions to the Section 404 permitting requirement were carved out by Congress, and in these instances, waters of the United States may be filled without a permit. The applicable permit exemption[1] related to farming activities states in pertinent part:

---

[1] Section (A) of this provision provides an exemption "from normal farming, silviculture, and ranching activities such as plowing, seeding, cultivating, minor drainage, harvesting for the production of food, fiber, and forest products, or upland soil and water conservation practices." 33 U.S.C. § 1344(f)(1)(A).  This section is known as the "Normal Farming Exemption." Initially, in their briefs Plaintiffs argued there were two exemptions applicable to this case, both the exemption under section (C) and the exemption under section (A). However, as the Federal Defendants point out, Lesslie never sought an exemption under Section (A). In Reply and during oral argument, Plaintiffs only argued that the Farm Pond Exemption, Section (C), was incorrectly applied to Lesslie's impoundment.  As such, the Court's analysis will only focus on the applicability of the Farm Pond Exemption in Section (C).

2

> Except as provided in paragraph (2) of this subsection, the discharge of dredge or fill material
>
> ***
>
> (C) for the purpose of construction or maintenance of farm or stock ponds or irrigation ditches, or the maintenance of drainage ditches;

33 U.S.C. § 1344(f)(1)(C).

This activity is not prohibited or otherwise subject to regulation, unless the discharge falls under Section 404(f)(2) ("Recapture Provision"). This provision "recaptures" certain activities that would appear to be exempt and requires a permit for the activity. The Recapture Provision applies to discharge that is "incidental to any activity having its purpose bringing an area of the navigable waters into a use to which it was not previously subject, where the flow or circulation of navigable waters may be impaired or the reach of such waters be reduced." 33 U.S.C. § 1344(f)(2). The Corps and the EPA share responsibility for implementing the Section 404 permit program. 33 U.S.C. §§ 1251(d), 1344, 1361(a). They each have their own regulations that mirror the terms of the Section 404(f)(1)(C) exemption. 33 C.F.R. § 323.4(a)(3),(c); 40 C.F.R. § 232.3(b), (c)(3).

### III.  BACKGROUND FACTS

Plaintiffs and Lesslie own neighboring properties outside the Rock Hill area in South Carolina. (ECF No. 40-2). Plaintiffs own and operate a cattle farm on property that is adjacent on two sides to property owned by Lesslie. (Id.). The Plaintiffs' property has been used for cattle farming for at least 60 years, and there is a single pond on Plaintiffs' property that was created in 1953 for the purpose of watering cattle. (ECF No. 40-1, p. 6). The water used to supply this pond on Plaintiffs' property originates from a spring that starts on Plaintiffs' property, flows through

the eastern portion of Lesslie's property, and then reemerges on Plaintiffs' property to fill Plaintiffs' cattle pond before it flows into Taylor Creek. (ECF No. 40-2).

Approximately ten years ago Lesslie purchased his property and five years ago began constructing a residence. (ECF No. 40-1, p. 6). He drilled two wells and also built two recreational ponds near his home. (Id. at p. 7). These ponds are located on the western portion of Lesslie's property, which are in upland areas of the property (i.e. non-waters of the United States) and are fed by the wells. (Id.; ECF No. 40-2).

In late 2009, Lesslie began the process of seeking approval to build a third pond on his property. (ECF No. 40-4). He applied for permission from SCDHEC to construct a dam on the eastern portion of the property (where the water that originates from the Plaintiffs' stream flows onto his property) to create a 1.35 acre pond. (Id.). In October 2009, Lesslie began the steps to obtain a Section 404 permit to fill portions of the creek for construction of an earthen dam for his third pond. (Id.). He sought a determination as to the location of any "waters of the United States" and indicated on his application that he wanted to construct the pond for "recreational purposes and enhancement of the property." (Id.). After receipt of Lesslie's application, the Corps issued a public notice of the permit application. (ECF No. 40-1, p. 8). Several complaints were lodged with the Corps regarding Lesslie's proposed pond, including objections from the Plaintiffs as well as the U.S. Fish and Wildlife Service and the South Carolina Department of Natural Resources. (Id.).

In response to these concerns, on December 11, 2009, the Corps requested additional information from Lesslie, including a response to the complaints, the need for a third pond, erosion control measures, forested upland buffer zones, and a proposed mitigation plan.[2] (ECF

---

[2] Part of the permitting process requires a "no net loss" of water resources and function. 40 C.F.R. § 230.93(a). As a result, compensatory mitigation is required by an applicant to offset the adverse impacts to wetlands, streams, and

No. 40-5). When Lesslie did not respond to this letter, the Corps sent another letter on January 25, 2010, requesting the same information. (ECF No. 40-6). Six months later, in June 2010, Lesslie informed the Corps that he was "studying possible alternatives" and that he wished to withdraw his application. (ECF No. 43-3, p.58).

In December of 2011, Lesslie contacted the Corps again regarding his proposed pond and inquired about the mitigation credits that would be necessary to obtain a permit. Email correspondence from Lesslie in January 2012, indicated that he was unable to secure the credits, and he was "pursuing a different path for the land around the potential pond." (ECF 40-7). Lesslie went on to state that he had always been interested in growing "peaches, grapes, berries, hops, etc.," and that he believed he would be able to present the Corps with "a plan that justifies use of the pond for agricultural purposes and thus be able to be exempt from the mitigation, which appears to be difficult, expensive, and maybe impossible." (Id.). Lesslie's intent was to construct a 1.8 acre pond in order to irrigate 3.5 acres of fruit trees, grapes, and berries that he intended to plant. (ECF No. 40-8).

On January 26, 2012, Lesslie applied for an agricultural exemption, identifying the primary purpose of the pond as "crop irrigation." (Id.). Additionally, Lesslie stated in his application that there were no other water sources on the property for irrigation of the planned agricultural site. (Id.). Lesslie provided the Corps with a completed Agricultural Irrigation Pond Exemption Information Form, responses to questions included in the Charleston District's guidance, topographical maps, aerial photographs identifying the location of the planned farm pond, and a water budget prepared by a certified professional engineer. (Id.). He also submitted

---

other aquatic resources. The Corps determines the compensatory mitigation required in order to receive a Section 404 permit "based on what is practicable and capable of compensating for the aquatic resource functions that will be lost as a result of the permitted activity." Id.

5

additional information about the clearing and planting of the area in preparation for the pond and his work with an engineer on sedimentation and erosion control measures.³ (Id.).

In June of 2012, the Corps informed Lesslie via letter that his construction of the proposed pond would be exempt under Section 404 (Farm Pond Exemption), provided he met six (6) specific conditions outlined in detail in the letter.⁴ (ECF No. 43-3, p. 24-25). The letter further cautioned Lesslie that any "change in use of a farm pond from irrigation or livestock watering to a non-farming related purpose will void the exemption status and a Department of the Army permit will be required." (Id.).

In August 2012, Plaintiffs lodged complaints with the Corps regarding Lesslie's construction of the pond, and in November 2012, Plaintiffs sent a notice of intent to sue to the Corps and Lesslie under the Act's citizen suit provision. (Id. at pp. 33-41 and 73). In December of 2012, the Corps conducted a site inspection of Lesslie's and Plaintiffs' properties. (Id. at 87). During that visit, Corps representative, Amy Cappellino, took photographs of the properties, the stream, and Lesslie's impoundment. (Id. at 99-116). She also collected information from the U.S. Drought Portal and spoke with both landowners. (Id. at 87-88, 95-98). Cappellino noted that despite the moderate drought, the flow downstream of the pond (towards the Plaintiffs' property) was greater than upstream of the impoundment. (Id. at 87). Lesslie informed Cappellino he was augmenting the water in his farm pond by pumping water from one of his upland ponds to ensure

---

³ Lesslie planted a portion of the crops in his vineyard prior to receiving the exemption letter from the Corps. However, to ensure that crops have the irrigation necessary to survive, the Corps allows sufficient time to plant the crops after an impoundment is built for irrigation, typically not to exceed 18 months after impoundment construction. (ECF No. 43-3, p. 91).

⁴ The six specific conditions set out by the Corps were: (1) the pond does not exceed the size required to facilitate normal farming/ranching operation; (2) it is specifically constructed for irrigation or livestock watering; (3) wetland impacts are minimized; (4) no toxic pollutants or hazardous waste will be discharged in the construction of the pond; (5) the construction of the farm pond will not convert extensive areas of water to dry land or impede the circulation or result in significant alterations to the flow, circulation, reach, or size of the waters of the United States; and (6) stabilization and sediment control measures will be deployed during and after pond construction. (ECF No. 43-3, p. 24-25).

the flow downstream was maintained. (Id.). As a result of her visit, Cappellino asked Lesslie to provide the Corps with an explanation of all the specific steps taken to comply with the conditions previously stated by the Corps for a Farm Pond Exemption (June 2012 Letter). (Id).

On January 14, 2013, Lesslie responded to the Corps' request and sent a letter detailing all measures taken to comply with the conditions set out by the Corps for the Farm Pond Exemption.[5] (ECF 48-2, p. 12-14). As a result of Lesslie's letter and the site visit, Campellino prepared a memorandum for the record stating that Lesslie was in compliance with the conditional letter issued by the Corps. (ECF No. 43-3, p. 89-94). She concluded that based on her site visit and Lesslie's compliance with the conditions set out by the Corps, Lesslie's pond was exempt from the permitting requirements under Section 404. (Id.). Thereafter, the Corps sought a review of this determination by the Environmental Protection Agency ("EPA"). (ECF No. 43-4). So, in April 2013, the Corps and EPA conducted another site inspection of the properties owned by Plaintiffs and Lesslie. (Id.). As a result of observations made during the site visit and a review of the Corps file, the EPA concurred in the Corps' determination that Lesslie's pond was exempt from permitting under the Act, stating, "[T]he impoundment appears to be used for the purpose of irrigating crops.[6] Further with the supplemental flow from the upland impoundment, neither the Lesslie impoundment nor downstream waters appear to be recaptured." (Id.).

On June 27, 2013, Plaintiffs filed this action asserting a citizen suit under the Act. All the parties moved for summary judgment and the Court heard oral arguments on October 20, 2014.

---

[5] Lesslie submitted more than one version of this letter to the Corps. These additional versions were submitted in response to the Corps' request for additional information as to condition number two ("[the pond] is specifically constructed for irrigation or livestock watering."). Lesslie's subsequent letters provide explanation as to why the existing ponds and wells on the property could not be used for irrigation of the orchard. (ECF No. 48-2).

[6] EPA personnel also noted that 1.44 acres had already been planted with crops, .93 acre was cleared for planting, and 1.53 acres were planned to be cleared during the next 3-4 months for a total of 3.9 acres in agricultural production. The EPA and Corps were assured during their visit that all planting would be finished within 18 months from the completion of impoundment construction. (ECF No. 43-4).

7

### IV.  LEGAL STANDARD

The appropriate standard for resolution of a case brought pursuant to the Clean Water Act is found under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551-806.  In ruling on a motion for summary judgment, the court must follow the standard of review applicable to actions brought pursuant to the APA.  *Alliance For Legal Action v. United States Army Corps of Eng'rs*, 314 F.Supp.2d 534,541 (M.D.N.C. 2004).  In such actions, all issues of fact have been resolved in an administrative process and a motion for summary judgment is essentially a request by the parties for a determination regarding whether the agency's action adhered to the standards for decision-making required by the APA.  *James City Cnty., Va v. EPA*, 12 F.3d 1330, 1338 n.4 (4th Cir. 1993).

An agency action, finding, or conclusion may be set aside when it is "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-14 (1971).  In making this determination, the court must consider "whether the Agency considered the relevant factors and whether a clear error of judgment was made."  *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (citing *Overton Park*, 401 U.S. at 416). The court must defer to the agency's determination where the agency has examined the relevant information and data and provided an explanation for its decision that includes a "rational connection between the facts found and the choice made." *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

A decision vacating the agency action is appropriate if the agency "has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of

8

the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007). However, in matters involving "predictions based on special expertise, 'a reviewing court must generally be at its most deferential.'" *Ohio Valley*, 556 F.3d at 192 (quoting *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87, 103 (1983)).

## V.  DISCUSSION

In light of the briefs submitted and oral argument presented by counsel, it appears two primary questions exist for the Court's resolution: (1) Did the Federal Defendants properly determine that Lesslie's pond is a farm pond within the meaning of § 404(f)(1)(C), such that a permit was not necessary for its construction?; and (2) Did the Federal Defendants properly determine the pond is not subject to the recapture provision of § 404(f)(2)?  In answering these questions, is also necessary to evaluate a third issue, specifically, whether Lesslie used the agricultural exemption process to attempt to bypass the Section 404 permit requirement.

### A.  *Farm Pond Exemption, § 404(f)(1)(C)*

The Farm Pond Exemption in § 404(f)(1)(C) provides that a permit is not required for the "discharge of dredged or fill material for the purpose of construction or maintenance of farm or stock ponds or irrigation ditches, or the maintenance of drainage ditches."  Plaintiffs assert the Federal Defendants should not have granted Lesslie an exemption for his third pond because he does not need the pond for irrigation purposes, and the Federal Defendants failed to exclude other water sources as a means for irrigation.  Further, they argue the Federal Defendants failed to conduct a thorough investigation of Lesslie's claim that the other water sources on his property could not be used for irrigation and merely relied, in error, on his representations.

9

The Federal Defendants [7] counter that there were multiple sources of information regarding the viability of other water sources for irrigation on Lesslie's property, and that they considered the other ponds and water sources on the property in their evaluation. Additionally, they fully considered and evaluated Lesslie's use of a pipe to pull water from his existing ponds to supplement the downstream flow of the third pond.

The record before the Court evidences the agricultural exemption application submitted by Lesslie specifically asks for information regarding other water sources and an explanation regarding why those other sources of water are not viable options for irrigation. (ECF No. 40-8). In response to this inquiry, Lesslie stated on his application, "There are no other water sources for irrigation of the planned agricultural site." (Id.). After submission of his application, Lesslie told Amy Cappellino of the Corps in an email, "[T]he other ponds/existing wells are too far away to serve as irrigation sources." In Lesslie's letter outlining his compliance with the conditions imposed by the Corps he also stated, "There are two ponds located in another area of our property, constructed near our homes to enhance the landscape. These were built on high, dry land have no water source other than a well and a limited watershed area." (ECF 48-2).

Lesslie further wrote, "The initial ponds [sic][8] on our property were dug to supply two homes, a shed/pole-barn, a barn/pasture with horses, donkeys, and goats, an outbuilding, and the two ponds near our home. These ongoing water requirements in addition to the distance involved and the cost of piping and electricity made it unfeasible to use these ponds for irrigation of the orchard." (Id.).

---

[7] The Federal Defendants and Lesslie provide similar reasoning and analysis of the issues in their briefs. All references to arguments made by the Federal Defendants include analogous arguments presented by Lesslie, unless otherwise noted.

[8] The Federal Defendants point out in Reply that the use of the word "ponds" here by Lesslie was clearly a typographical error and that the word should have been "wells." In light of the sentence itself, as well as the entire record, it is clear Lesslie meant "wells" rather than "ponds."

10

The Corps initially met with Lesslie to perform a jurisdictional determination, which mapped the topography of the property and resulted in the presence of surface waters only on the eastern portion of Lesslie's property.[9] In addition, representatives from both the Corps and the EPA made several site visits to inspect the property. After its visit, the EPA agreed with the Corps' assessment that the pond was exempt from permitting because it was being used for irrigation of the orchard and would be used for the additional plantings Lesslie intended to make.

While on site, representatives noted Lesslie was pumping some water from his upland ponds to supplement the water in the agricultural pond to ensure that downstream flows were maintained. Plaintiffs argue this action by Lesslie is proof positive that the third pond was not necessary for irrigation and that water from the other two existing ponds could have been used for watering purposes. However, the Federal Defendants point out, the fact Lesslie was supplementing the third pond with water from his other ponds during a time of moderate drought does not show that the supplemental water supplied would be adequate to meet the water needs of the 3.9 acres of crops in Lesslie's orchard. Furthermore, the Corps and EPA noted during their site visits the presence of an irrigation system in place for the third pond, as well as the crops that had already been planted. As such, they determined Lesslie fully intended to use water from the third pond to irrigate his crops, which entitled him to a Farm Pond Exemption.

The Federal Defendants presented further evidence that they maintain raises questions about the permissibility of Lesslie's actions. In March 2011, two months before Lesslie was granted the exemption for his pond, Amy Cappellino sought legal advice related to requests for agricultural exemptions. Two of the questions posed were: (1) Does the definition of a "producer" require the producer to sell items they grow, or can they obtain an exemption for a home garden or personal/private consumption of the food/fiber? and (2) If a dam (fill) is placed

---

[9] The other two ponds and wells are located on the western portion of Lesslie's property.

in a tributary (water of the U.S.) for the purpose of impounding water to irrigate crops, does that fill (dam) trigger the recapture clause (and require a permit) due to a change in use of the tributary at the location of the dam (conversion to uplands for the purpose of impounding water) and/or due to alteration of the flow and circulation of the tributary? (ECF No. 48-1). This email does seem to suggest that the Federal Defendants may have been faced with a novel situation in dealing with Lesslie's request for the exemption. The factual details of the questions posed are synonymous to those presented here, and the record does not contain any documentation responsive to these questions. However, the fact that the Federal Defendants may have been traversing new territory in this case, given the particular issues related to Lesslie's pond, is not indicative of wrong-doing on the part of the Federal Defendants or Lesslie. While this email may raise some questions regarding the applicability of the exemption to Lesslie's pond, it does not necessarily suggest that the final decision rendered by the Federal Defendants was arbitrary, or capricious.

While all parties tacitly acknowledge Lesslie's original purpose for the pond was "recreational" and "enhancement of the property," this does not change the fact that the later, actual use of the pond was for irrigation. During site visits, the Federal Defendants observed the planted crops and the placement of an irrigation system in the third pond for the watering of those crops. Lesslie complied with all requests from the Federal Defendants and his representations about other water sources on the property were independently verified by the Federal Defendants during their site visits. Accordingly, the Court concludes that Lesslie has used the third pond for irrigation of the crops, and as such, the Federal Defendants' determination that Lesslie was entitled to a Farm Pond Exemption was not arbitrary, capricious an abuse of discretion, or otherwise not in accordance with the law.

### B. *Recapture Provision, § 404 (f)(2)*

Even in instances where an activity may be entitled to an exemption under § 404(f)(1), the limitations set forth in § 404(f)(2) may recapture the discharges associated with an activity and bring it back under the permitting requirements of the Act. Essentially, "[t]o be exempt from the permit requirements, one must demonstrate that proposed activities both *satisfy* the requirements of § (f)(1) and *avoid* the exception to the exemption (referred to as the 'recapture' provision) of § (f)(2)." *United States v. Akers*, 785, F.2d 814, 819 (9th Cir. 1986) (emphasis in original).

The recapture provision has two conditions, which if met, require a Section 404 permit regardless of whether the activity would otherwise be exempt. A Section 404 permit is required: (1) if the activity is part of an activity whose purpose is to convert an area of the waters of the United States into a use to which it was not previously subject, and (2) the flow or circulation of waters of the United States may be impaired or the reach of such waters reduced. 33 U.S.C. § 1344(f)(2).[10]  Read together, the two parts of Section 404(f) provide a narrow exemption for agricultural and silvicultural activities that have "little or no adverse effect on the waters of the U.S." *Avoyelles Sportsmen's League, Inc. v Marsh*, 715 F.2d 897, 926 (5th Cir. 1983); *United States v. Brace*, 41 F.3d 117, 124 (3rd Cir. 1994). All parties agree that both the new use requirement and the impairment requirement must be met in order for the Recapture Provision to apply.

---

[10] The original wording of the statute is not broken down into subsections and reads, "Any discharge of dredged or fill material into waters of the United States incidental to any of the activities identified in paragraphs (a) (1) through (6) of this section must have a permit if it is part of an activity whose purpose is to convert an area of the waters of the United States into a use to which it was not previously subject, where the flow or circulation of waters of the United States may be impaired or the reach of such waters reduced." 33 U.S.C. § 1344(f)(2).

13

### 1. New Use Requirement

Under the first prong, Plaintiffs argue Lesslie's pond is subject to the Recapture Provision because it constitutes a new use. Plaintiffs contend Lesslie's agricultural area constitutes a new use of his property because he built it so he could then create an orchard. The pond was not constructed to support an already established orchard on the property.

In their briefs, the Federal Defendants counter that Lesslie's pond did not constitute a new use of the land. However, during oral argument on these motions, counsel for the Federal Defendants indicated after further review of the record they "concede" this argument, and agree that Lesslie's pond did in fact constitute a new use. Therefore, the Court need only analyze the second prong to determine whether Lesslie's pond falls under the recapture provision.

### 2. Impairment of Flow Requirement

The second prong of the recapture provision analyzes whether there is any impairment to the flow or circulation of the water or whether the reach of the waters have been reduced.

Plaintiffs aver it is clear Lesslie's pond has an impact on the circulation and flow of the previously existing creek. Lesslie's dam fills approximately 100 linear feet of the creek and his pond inundates approximately 500 linear feet of the creek. Plaintiffs state that under such circumstances the Federal Defendants are required to presume that the impairment element of the recapture provision is satisfied: "Where the proposed discharge will result in significant discernible alterations to flow or circulation, the presumption is that flow or circulation may be impaired by such alteration." 33 C.F.R. § 323.4(c).[11] Plaintiffs assert the record is devoid of any indication that the Federal Defendants applied or considered this presumption, and that the

---

[11] Plaintiffs go on to explain that the Corps' regulation specifically lists constriction of a dam/dike for conversion of waters to agricultural purposes as an activity that invokes the recapture provision. "[A] permit will be required for the conversion of . . . a wetland from silvicultural to agricultural use when there is a discharge of dredged or fill material into waters of the United States in conjunction with construction of dikes, drainage ditches or other works or structures used to effect such conversion." 33 C.F.R. § 323.4(c).

entirety of their decision rests on their observation of the pipe installed by Lesslie to pump water from one of his upland ponds to the third agricultural pond.

Plaintiffs further contend the Federal Defendants erroneously relied on the use of this pipe to defeat the recapture provision. They stress that the use of water from the upland pond calls into question the need for the third pond at all, but most importantly they observe that there is no indication that the pipe installed by Lesslie will be a permanent fixture on the property, such that it will continue to supply water to supplement the flow of the stream. Further, they assert the Federal Defendants only observed the amount of water entering and exiting Lesslie's pond, and that method of analysis ignores the impact on circulation and flow within the actual project area.

The Federal Defendants defend their decision that there was no impairment to the flow or circulation of the perennial stream because the water had greater flow downstream from the Lesslie pond than upstream. The Federal Defendants determined that any perceived reduction in the level of water in the Plaintiffs' impoundment was due to the ongoing drought in the area, and that the pond on the Plaintiffs' property still contained a sizeable amount of water. Additionally, they justify their determination based on the evidence contained in the Corps' record, including photographs taken of the area, as well as the assessment of the geomorphology, hydrology, biology, and flow of the stream conducted by the EPA during their visit.

Moreover, the Federal Defendants call attention to the fact that the words "impaired" and "reduced," as used in the Act, are not otherwise defined by the Act itself. They cite to an Opinion by the Attorney General of the United States that grants the administrator of the EPA authority to determine the meaning of Section 404(f). 43 Op. Atty Gen. 197, 1979 WL 16529 at *4 ("final authority under the Act to construe § 404(f) is . . . vested in the Administrator [of the

EPA]."). Accordingly, the Federal Defendants maintain they relied on the EPA's interpretation of the Act, as found in the EPA guidance letter to the Corps,

> This is not to say that all farm ponds would be recaptured based on a change in use and impairment of flow. All impoundments will interfere with flow to some extent, so the recapture provision must be applied in a reasonable way to support the legitimate purpose of the farm pond exemption while remaining consistent with the statutory intent that only minor environmental impacts be exempted. Ponds which result in minimal impacts, as contemplated by the statute, would not be recaptured. While each case is evaluated on its specific facts, ponds of smaller size, and ponds sited to minimize impacts, are more likely to be exempt.

(ECF No. 43-2). In light of this instruction, the Federal Defendants found the pond did not impair the flow of the water because it resulted in minimal environmental impacts to the area.

As previously noted, the Court is required to employ a deferential standard when reviewing the actions of the Federal Defendants. It appears to the Court the Federal Defendants' analysis of whether the farm pond results in minor environmental impacts seems to comport with the guidelines provided by the EPA. Plaintiffs make a sound argument about the lack of permanency of Lesslie's pipe; however, this fact does not negate the lack of evidence in the record that Plaintiffs' pond levels have been negatively impacted in any way. Even when asked during oral argument whether the Plaintiffs had experienced decreased water flows to their pond, counsel was unable to provide the Court with definitive information suggesting that such a change had occurred since Lesslie's construction of the pond.

Moreover, the Court recognizes that while Lesslie's pipe may not be a guaranteed, permanent fixture, Lesslie's obligation to comply with the specific criteria set forth by the Federal Defendants for an exemption is. This continuing obligation to ensure that water levels in the Plaintiffs' pond are not reduced, lest Lesslie lose his exemption status, was readily

16

acknowledged by Lesslie's own counsel during the hearing. All parties have recognized, as was clearly stated in the Corps' letter June of 2012, Lesslie's failure, in any way, to comply with the specific conditions articulated for the farm pond exemption would void his exemption status. Therefore, Plaintiffs are not barred from instituting another enforcement suit, should Lesslie fail to adhere to the strict requirements set forth by the Federal Defendants.

### C. *Claims of Pretext*

The final argument advanced by Plaintiffs for revocation of the pond's exemption is that Lesslie's stated intention for building the pond (i.e. for agricultural purposes) was merely pretext so he could circumvent the permitting requirements of Section 404.

In support of this position Plaintiffs point to Lesslie's failed first attempt to obtain a permit to build the third pond on his property, and the fact that Lesslie admitted that obtaining the mitigation requirements necessary to obtain the permit would be expensive and nearly impossible. Lesslie also wrote an email to Corps' representatives indicating his intention to pursue "a different path for the land around the potential pond" in an effort to "justify the use of the pond for agricultural purposes." Further, Lesslie's original application sought a Section 404 permit for a recreational pond, yet he later applied for an agricultural exemption for an irrigation pond. Plaintiffs claim the Federal Defendants were complicit in Lesslie's attempt to avoid permitting requirements, and that they made no attempts to resolve the problems initially raised by them and others when Lesslie initially sought to build the pond with a permit.[12] Plaintiffs allege the Federal Defendants took conflicting positions about Lesslie's pond pre and post notice of intent to file suit.

---

[12] Plaintiffs are referring to the letters sent by the Corps to Lesslie after he submitted his request for a permit. The letters set forth several issues the Corps requested additional information about related Lesslie's construction of the pond.

17

The Federal Defendants state Plaintiffs are merely attempting to advance another argument, in varying form, that Lesslie's pond is not, in fact, a farm pond and does not meet the requirements for an exemption.  Further, they cite to the many actions taken by Lesslie to comply with the requirements imposed to obtain the Farm Pond Exemption. "Lesslie consulted with the Corps and state agencies in connection with the requirements for a pond farm [sic], hired professional engineers to prepare a water budget and design the impoundment, constructed the pond in accordance with the proposed plan, installed irrigation equipment, planted crops appropriate for the area, and took actions to ensure he met the conditions for the farm pond exemption" (ECF 51, p. 16).  Lesslie himself points out that there can be no pretext because he has planted the orchards and vineyards that formed the basis of the request for an agricultural exemption (i.e. his request for the exemption would only be pretext had he not actually planted the crops necessary for the agricultural exemption).

The Federal Defendants readily acknowledge that Lesslie first sought to obtain a permit for the pond, but argue that fact is not determinative of whether the farm pond exemption applies.  They argue Lesslie stated the primary purpose of his pond was to irrigate crops, and he has planted the crops and installed irrigation equipment for that purpose.  The additional site visits and memoranda prepared by the Corps and EPA were the result of continued complaints by Plaintiffs about the pond, which prompted the Federal Defendants to conduct another analysis about whether their initial approval of the exemption was still valid.

It does not appear to the Court that Lesslie's actions were an attempt to bypass the permitting requirements or deceive the Federal Defendants. Lesslie made his intentions known from the outset and told the Federal Defendants about his plan to construct the pond for

agricultural purposes when he determined a permit for recreational purposes was not feasible. All evidence in the Corps' file indicates Lesslie was forthright and cooperative with the agencies.

Additionally, it is evident Lesslie took all steps and expense necessary to comply with the conditions set out by the Federal Defendants for the exemption. As Lesslie points out, he did in fact plant nearly 4 acres of crops, and he is using the third pond to irrigate those crops, both of which were necessary to obtain the exemption. The Court sympathizes with the fact that Plaintiffs are, no doubt, frustrated by Lesslie's construction of the pond, and while they make valid observations regarding Lesslie's changed intentions and purpose for the pond, Lesslie has done all that was required of him to obtain the exemption.  While Lesslie's actions may seem unfair to Plaintiffs, as it is clear they did not want him to build this impoundment under any circumstance, there does not appear to be anything deceitful or illegal about his actions.  As such, the Court finds Plaintiffs' claims of pretext to be unpersuasive.

### VI.    CONCLUSION

Based on the record before the Court, the briefs filed by the parties, and the arguments of counsel, the Court hereby **DENIES** Plaintiffs' Motion for Summary Judgment and **GRANTS** defendants' motions for summary judgment.

IT IS SO ORDERED.

October 29, 2014                                     Joseph F. Anderson, Jr.
Columbia, South Carolina                       United States District Judge